IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

DONALD KEITH DENNIS, PRO SE,   §
TDCJ-CID No. 1093314,   §
      §
    Plaintiff,   §
      §
v.   §   2:15-CV-0330
      §
BARRY L. MARTIN, Head Warden,   §
JAMES BEACH, Asst. Warden,   §
GREGORY DAVID, Asst. Warden,   §
Sgt. NFN GRAY, Sgt. NFN LONG,   §
Lt. NFN BROOM, Lt. NFN PACHEO,   §
Sgt. NFN RAMIREZ,   §
C.O. NFN DEWRIGHT,   §
C.O. YOLANDA FLANNORY, and   §
UNIDENTIFIED TDCJ STAFF AND   §
   COMPANY,   §
      §
    Defendants.   §

**REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART
DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Before the Court is Defendants' Motion to Dismiss for Failure to State a Claim filed July

22, 2016. Defendants BROOM and LONG filed a joint motion for dismissal [D.E. 31] and a joint

supplement to that motion on August 16, 2016 [D.E. 36]. On December 5, 2016, plaintiff filed a

response to defendants' motion for dismissal and also requested leave to amend his complaint on

August 15, 2016 [D.E. 35]. The Court has reviewed all arguments of the parties and the

information contained in the Amended Complaint as well as documents attached to the original

complaint, specifically the numerous grievances filed by the plaintiff concerning this case.

**OVERVIEW OF THE CASE**

By his Complaint, plaintiff alleges he was denied attention by named defendants on three

occasions which placed his life in danger.  Plaintiff had been placed in the high security building

and was housed with an inmate "Keele." On May 2, 2015, in the first of the three incidents of deliberate indifference alleged by plaintiff, plaintiff states he was depressed and asked Correctional Officer (hereinafter "CO") DEWRIGHT[1] for help. Plaintiff requested DEWRIGHT call the "Crisses [sic] Unit" and CO DEWRIGHT replied "if [plaintiff] need[ed] help [he] was to cut [him]self then he [would] call for help." Plaintiff says that, at 2:30 p.m., he cut himself to get help.

On August 2, 2015, during the second incident of deliberate indifference, plaintiff fell in his cell and cut his chin. He alleges defendants, as part of a conspiracy against him, denied him medical care. Although he did eventually receive medical attention for the fall, plaintiff claims it was not in a timely manner.

Lastly, on an unspecified date in 2015, plaintiff states his cellmate (Keele) tried to kill himself and plaintiff and cut plaintiff three times with a sharp object. Plaintiff says they both pushed the emergency call button before inmate Keele cut him, but the button was not working and no one responded. Plaintiff says if the ranking officer had moved inmate Keele to the Crisis Unit this would not have happened.

This last incident, when plaintiff suffered injury when his fellow inmate had an alleged breakdown and cut the plaintiff, is the chief focus of his complaint. Plaintiff alleges that prior to this incident, Keele spoke to both defendants BROOM and LONG and stated "he did not feel safe" in the cell and requested to be removed. Plaintiff alleges Keele stated "he wanted to hurt himself or 'someone' else." Plaintiff was Keele's only cellmate and plaintiff claims BROOM told Keele that "no blood or bruises" on either plaintiff or Keele indicated "they must be getting along." Plaintiff further claims BROOM stated to Keele "if he [Keele] wanted to get out, he

---

[1] Defendants, in their joint motion to dismiss, claim they are unable to identify an officer by the name of DEWRIGHT and cannot make arguments on an unknown individual's behalf. The joint motion to dismiss is therefore only on the part of LONG and BROOM.

know [sic] how." Plaintiff claims defendant DEWRIGHT provided plaintiff with the razor for the purpose of letting plaintiff cut himself during the May 2, 2016 incident.

Plaintiff also alleges the "ranking officer" allowed the CO in charge of monitoring his cellblock, the CO "Rover,"[2] to purposefully disconnect the emergency call button so assaults can take place in cells without responses by TDCJ personnel. Plaintiff claims on page 8 of his amended complaint that defendants acted in concert regarding the emergency call button and were made aware it was not working prior to the assault on plaintiff by Keele. In his Step 2 grievance numbered 2015188383 attached to his original complaint, plaintiff alleges the safety conditions on the high security unit are deficient and these deficiencies are known to all defendants. In his Step 2 grievance numbered 2015170766, plaintiff alleges CO "Rover" does not answer when called and further alleges defendants LONG and BROOM, among others, have told plaintiff all he has to do is "holler," because the emergency call button has not worked since they started working there, although it was apparently fixed shortly thereafter. Plaintiff states he cannot be heard by TDCJ personnel from inside the steel and glass of his cell. Plaintiff states inmate Keele is stationed at the front of the cell and he is at the back of the cell. Plaintiff states he has twice needed the emergency call button and been unable to summon help by using the button.

Plaintiff also alleges in his Step 2 grievance numbered 2015142657, apparently filed prior to the assault incident, that the warden and the COs create an unsafe atmosphere in the high security unit by using excessive force, unlawfully confiscating property, failing to properly investigate grievances, retaliatory behavior, and cover ups of bad behavior on the part of TDCJ officials. In his complaint, plaintiff asserts the cell, without access to the emergency call button or supervised by the CO Rover, is a "death trap," which is well known by all named defendants.

---

[2] The "Rover" appears to be the CO in charge of making rounds during the shift to determine that all is as it should be on the cell block. Plaintiff alleges the Rover fails to make rounds and sleeps during his shift with the fan on where he cannot hear anyone if they cry out for help.

In his response to the Questionnaire sent by the Court, plaintiff states on March 1, 2015, he sent a letter to TDCJ personnel and filed a grievance regarding the emergency call button. A purported copy of the letter is attached to plaintiff's motion for investigation. Plaintiff specifically asserts both Keele and he pressed the emergency call button prior to the assault when plaintiff was attacked by Keele. Plaintiff also makes several claims about the mental health of Keele and himself. He requested to go to the Crisis Unit and was forced to cut himself before he would be taken there on one occasion prior to the assault.

In a document dated July 23, 2015, and attached to plaintiff's motion for investigation filed May 19, 2016, TDCJ did conduct an offender protection investigation based on plaintiff's allegations of potential harm at the hands of his previous cellmate. Plaintiff was moved to a new cell, the one he had to share with Keele. The July 23, 2015 letter indicates TDCJ staff was also aware plaintiff once again made claims that his safety was being threatened by his new cellmate (Keele). At any rate, this document appears to refute claims made by defendants LONG and BROOM in the motion to dismiss that plaintiff never requested an offender protection investigation or that one was never conducted. At the very least, the letter supports plaintiff's claims he made TDCJ officials aware of possible discord between plaintiff and inmate Keele and he made them aware of the defective emergency call button and lack of staff supervision.

### CLAIMS AND REQUESTS FOR RELIEF

Plaintiff DONALD KEITH DENNIS, acting pro se and while a prisoner incarcerated in the Texas Department of Criminal Justice, Correctional Institutions Division, has filed suit pursuant to Title 42, United States Code, section 1983 complaining against defendants LONG, BROOM and DEWRIGHT and was granted permission to proceed in forma pauperis. Plaintiff additionally filed suit against defendants BEACH, MARTIN, DAVID, GRAY, PACHEO, and RAMIREZ, but these claims were dismissed June 21, 2016, without prejudice for failure to state a claim and with prejudice as frivolous. Plaintiff has filed several requests to amend his suit, but has failed in the past to attach an amended complaint. Plaintiff now has a pending motion to

amend his complaint with a properly attached amended complaint. In deciding the defendants'
motion to dismiss the Court will consider all claims in plaintiff's properly amended complaint.
Plaintiff's pending claims involve deliberate indifference to his medical needs by DEWRIGHT
and deliberate indifference to his personal safety by DEWRIGHT, LONG, and BROOM.

Plaintiff requests he be provided with safety and protection and compensation for the
"failure to do sure which I was cut up." By his Attachment C-4 to his Complaint, plaintiff also
requests a transfer off the Clements Unit, that his claims be investigated and staff be increased
and trained, that the camera be reviewed, and "[t]o have a [illegible] on the Pod so that whoever
work do not have to wait minute to get in a cell to help . . .."[sic].

Plaintiff complains defendants LONG and BROOM acted with deliberate indifference to
his safety when they were informed by inmate Keele that he felt unsafe in the cell with plaintiff
and wanted to hurt someone or himself. Plaintiff also alleges LONG and BROOM had
knowledge of the broken emergency call button and the unsafe environment it caused. Plaintiff
claims LONG threatened him with harm if he refused to return to the cell with Keele on one
occasion and BROOM told Keele he would not do anything about the situation between Keele
and plaintiff unless he saw blood or bruises.

Plaintiff claims defendant DEWRIGHT was deliberately indifferent to his mental health
needs in May of 2015 and also DEWRIGHT provided plaintiff with a razor for plaintiff to cut
himself in order to be seen by the Crisis Unit.

## STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move for a
speedy dismissal without the burdens of discovery when a plaintiff fails to state a claim upon
which relief can be granted. In ruling on a 12(b)(6) motion, the "court accepts all well-pleaded
facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal
Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). To

move past a 12(b)(6) motion the plaintiff "must plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 556).

Rule 12(b)(6) dismissals are powerful tools in the protection of immunities granted to official actors and these dismissals are effective in expediting the judicial process in cases where there are no cognizable claims, but these dismissals are disfavored motions that are rarely granted. *Clark v. Amoco Production Co.*, 794 F.2d 967, 970 (5th Cir. 1986).

Defendants have asserted the defense of qualified immunity. In *Scott v. Harris*, 550 U.S. 372, 380–81, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) the Supreme Court held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380. Here, however, defendants have not filed a motion for summary judgment. Instead a motion to dismiss is before the Court.

In addition to qualified immunity, defendants also assert Eleventh Amendment immunity. The principle of state-sovereign immunity generally precludes actions against state officers in their official capacities. *See Edelman v. Jordan*, 415 U.S. 651, 663-69, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The exception to this rule is contained in the *Ex parte Young* doctrine. Under *Ex parte Young*, "a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law." *Quern v. Jordan*, 440 U.S. 332, 337, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Insomuch as the plaintiff is suing for

the defendants in their official capacities, his suit should be dismissed based on eleventh amendment immunity.

## DELIBERATE INDIFFERENCE

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." Such indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Deliberate indifference is defined as a failure to act where prison officials have knowledge of a substantial risk of serious harm to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1981, 128 L.Ed.2d 811 (1994).

Nevertheless, not every claim of inadequate or improper medical treatment is a violation of the Constitution, *Estelle v. Gamble*, 429 U.S. 97, 105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Negligent medical care will not support a claim under section 1983. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). A delay in medical care is only cognizable if it resulted in substantial harm. *Id.*

Plaintiff claims on May 2, 2015, he alerted defendant DEWRIGHT to his medical needs regarding mental health care. As no motion to dismiss has been filed by defendant DEWRIGHT, who remains unidentified by TDCJ representatives and who has not yet filed an answer or other responsive pleading, the Court does not address this allegation by plaintiff at this time and the claim endures.

## PLAINTIFF'S CLAIMS OF DELIBERATE INDIFFERENCE TO PERSONAL SAFETY BY BROOM AND LONG AND THE DEFENSE OF QUALIFIED IMMUNITY

Defendants correctly acknowledge a prison official has a constitutional duty to protect prisoners from violence at the hands of their fellow inmates. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). The inmate is required to show the conditions of his confinement pose a

"substantial risk of serious harm" and prison officials were deliberately indifferent to that risk. *Id*. at 834.

Once defendants assert they are entitled to qualified immunity the burden shifts to the plaintiff to rebut that defense. *Harris v. Serpas*, 745 F.3d 767, 771 (5th Cir. 2014). A motion to dismiss is an earlier stage in the case than a motion for summary judgment. At the earlier stage, "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'" *Behrens v. Pelletier*, 516 U.S. 299, 309, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (emphasis in original). However, qualified immunity claims should be determined as early as possible in the suit. *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116, 116 L.Ed.2d 589 (1991). Specifically, defendants LONG and BROOM allege plaintiff has not articulated any personal involvement on the part of either LONG or BROOM in failing to protect plaintiff, which is an essential element of plaintiff's claim. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). Defendants argue plaintiff never alleged he requested BROOM or LONG take any action to protect him from harm or that LONG or BROOM had personal involvement in the emergency call button not working. Dismissal pursuant to a motion to dismiss, however, considers only whether plaintiff has alleged sufficient facts to articulate a plausible claim for relief. Plaintiff's pleadings, which set out specific claims of deliberate indifference to personal safety, do allege the personal involvement of BROOM and LONG sufficient to state a claim. Allegations that defendants had knowledge of the safety risks inherent in plaintiff's prison cell environment and failed to act to alleviate those risks constitute a plausible claim to relief under the deliberate indifference to personal safety standard.

Although plaintiff has not alleged personal involvement by LONG or BROOM in disengaging the emergency call button in his cell, defendants' knowledge of the non-working button (which is alleged by plaintiff) creates a claim that survives a motion to dismiss. Defendants acknowledge a duty of prison officials to protect inmates from a known substantial risk of harm. Plaintiff has alleged defendants LONG and BROOM knew of such a risk.

"Whether a prison official had the *requisite knowledge* of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official *knew of a substantial risk* from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. at 842. This plaintiff could make a showing that the substantial risk was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past." *Id.* at 842. It is a fact issue if the defective call button, coupled with a known conflict between cellmates, could create this environment from which plaintiff needed protection.

Plaintiff's allegations in his failure-to-protect claim are sufficient to survive a motion to dismiss, even though defendants are asserting qualified immunity. Plaintiff alleges defendants LONG and BROOM and DEWRIGHT were aware of the safety risk involved in not having an emergency call button in a cell where steel and glass separate the plaintiff from help. Plaintiff also alleges LONG and BROOM were made aware of the conflict between Keele and plaintiff and verbally encouraged them to fight if they wanted to be moved to different cells. Plaintiff has submitted documents attached to his pleadings showing prior complaints made to TDCJ officials where he alleges they were aware of the defective emergency call button and that LONG and BROOM were specifically aware of it. Plaintiff's allegations, in light of his status as a pro se plaintiff, are adequate to indicate he is alleging defendants were aware of known security risks on the unit and in particular were aware of the risk to plaintiff's safety in this case.

The Court must accept as true plaintiff's allegations, in overcoming a motion to dismiss, regarding the lack of adequate security caused by the failed emergency call button and the ongoing dispute between Keele and plaintiff. These allegations could support a factual finding that he was incarcerated under conditions posing a substantial risk of serious harm and LONG, BROOM and DEWRIGHT had actual knowledge of these conditions and failed to act to protect plaintiff from that danger and, as a result, plaintiff was injured (cut three times by his cellmate, Keele).

The personal defense of qualified immunity does not resolve official capacity claims, the defendants have also asserted Eleventh Amendment immunity in regards to these claims. *See Stallworth v. Slaughter*, 436 Fed.Appx. 337, 340 (5th Cir. 2011). BROOM and LONG are entitled to Eleventh Amendment Immunity insofar as plaintiff is suing them in their official capacities for failing to protect plaintiff. Therefore, defendants' motion to dismiss the plaintiff's claims against defendants LONG and BROOM in their official capacities should be granted, and the motion to dismiss these claims against defendants in their individual capacities should be denied. Defendants have reserved the right to reassert qualified immunity in a motion for summary judgment, which is not prevented by this order. On summary judgment the Court may look at and consider evidence outside the pleadings. *See McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

## CONCLUSION

It is the RECOMMENDATION of the Magistrate Judge to the United States District Court that the Defendants' Motion to Dismiss claims against defendants LONG and BROOM be GRANTED IN PART as it relates to claims made by plaintiff against defendants IN THEIR OFFICIAL CAPACITIES PURSUANT TO ELEVENTH AMENDMENT IMMUNITY and DENIED IN PART AS IT RELATES TO CLAIMS IN THEIR INDIVIDUAL CAPACITIES FOR FAILURE TO PROTECT PLAINTIFF.

### INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this _____ day of March, 2017.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

2:15-CV-0330.DENNIS.DENY.D/M: 4

## \* NOTICE OF RIGHT TO OBJECT \*

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)©, or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).

2:15-CV-0330.DENNIS.DENY.D/M: 4