IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| DONALD KEITH DENNIS, PRO SE, <br> TDCJ-CID No. 1093314, <br> <br> Plaintiff, <br> <br> v. <br> <br> BARRY L. MARTIN, et al., <br> <br> Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | <br> <br> <br> <br> <br> 2:15-CV-0330 |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## TO GRANT IN PART AND DENY IN PART,
## BROOM, LONG AND DWIGHT'S JOINT MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendants BROOM, LONG, and DWIGHT's Joint Motion for Summary Judgment ("Joint Motion"), with a supplemental brief in support and appendix of evidence. [ECF 76, 79, and 80, respectively]. Plaintiff DONALD KEITH DENNIS, proceeding pro se, filed a Response to the Joint Motion. [ECF 81]. This Court has reviewed all of the summary judgment evidence identified in this paragraph and all the arguments of the parties set forth in these documents.

This case arises out of plaintiff's claims under 42 U.S.C. § 1983. Plaintiff makes claims of deliberate indifference to his safety in violation of the Eighth Amendment by defendants BROOM and LONG and deliberate indifference to his safety and medical needs by defendant DWIGHT. These claims arise from an episode of self-harm by the plaintiff and a second incident where plaintiff's cellmate, inmate Keele, injured both plaintiff and himself. Although plaintiff brought claims against other defendants, the Court dismissed those claims by Order of Partial Dismissal on June 21, 2016.

I.
THE FACTUAL EVIDENCE BEFORE THE COURT

A. FACTUAL OVERVIEW

Plaintiff was transferred to the Clements Unit on January 26, 2015. Plaintiff was given an initial mental health evaluation on January 30, 2015. At this initial screening, plaintiff acknowledged a history of suicidal and self-injurious behavior, but denied being a current risk to himself or others. Mental health staff further evaluated plaintiff in February of 2015. Plaintiff was not admitted to crisis management again until after he cut himself on May 2, 2015.

B. CHRONOLOGY OF EVENTS

1. *Plaintiff cut himself with a razor on May 2, 2015.*

On May 2, 2015, in the first of the two remaining alleged incidents of deliberate indifference by Texas Department of Criminal Justice ("TDCJ") staff, plaintiff states he was depressed and asked Correctional Officer DWIGHT ("DWIGHT") for help. Plaintiff claims he requested DWIGHT call the "Crisses [sic] Unit" and DWIGHT replied "if [plaintiff] need[ed] help [he] was to cut [him]self then he [would] call for help." Plaintiff further alleges that DWIGHT then provided plaintiff with a razor to cut himself and left the cellblock. Plaintiff says that, at 2:30 p.m. on that day, he cut himself with the razor provided to get mental health care.

Prior to the incident on May 2, 2015, plaintiff filed grievances with TDCJ indicating that the emergency call button in his current cell (where he was housed in March of 2015) was not working. Plaintiff claimed in his grievance that he had pushed the call button while in need of mental health treatment and no one responded. Plaintiff did not report any previous self-injury as a result of the failure of TDCJ to fix the emergency call button. However, the evidence indicates

that plaintiff attempted to make TDCJ officials aware of his mental health needs and the non-working emergency call buttons.

> 2. *After an altercation with his cellmate, inmate Keele, on June 26, 2015, plaintiff was injured.*

Plaintiff was placed in the high security building and was housed with inmate Keele ("inmate Keele" or "Keele"). On June 26, 2015, plaintiff states his cellmate Keele tried to kill both himself and plaintiff and cut plaintiff three times with a sharp object. Plaintiff says they both pushed the emergency call button before inmate Keele cut him, but the button was not working and no one responded. Plaintiff says if Lieutenant BROOM or Sergeant LONG had moved inmate Keele to the Crisis Unit when Keele reported his deteriorating mental health condition to them, this attack would not have happened.

This incident, whereby plaintiff suffered injury when his fellow inmate had an alleged breakdown and cut the plaintiff, is the chief focus of his complaint. Plaintiff and inmate Keele received immediate medical treatment for the injuries. Plaintiff had cuts on his arms and chest from a razor blade. A total of five razor blades were located in the cell after the incident.

Plaintiff alleges that prior to this incident, Keele spoke to both defendants BROOM and LONG and stated, "he did not feel safe" in the cell and requested to be removed. Plaintiff alleges Keele stated, "he wanted to hurt himself or 'someone' else." Plaintiff was Keele's only cellmate and plaintiff claims BROOM told Keele "no blood or bruises" on either plaintiff or Keele indicated "they must be getting along." Plaintiff further claims BROOM stated to Keele "if he [Keele] wanted to get out, he know [sic] how." From a reading of all of plaintiff's submissions, it appears that Keele discussed his mental state with BROOM and LONG over the course of three days prior to the attack on June 26, 2015.

Plaintiff is no longer assigned to the Clements Unit; he was transferred to the Hughes Unit and later to the Allred Unit in Iowa Park, Texas.

II.
PLAINTIFF'S CLAIMS FOR RELIEF AGAINST BROOM, LONG, AND DWIGHT

Plaintiff makes the following claims in his Amended Complaint:

1. (BROOM and LONG) Cruel and Unusual Punishment Under the Eighth Amendment for Deliberate Indifference to plaintiff's safety (failure-to-protect) by:

    a. Failing to move plaintiff from his cell and separate him from inmate Keele prior to the altercation between plaintiff and inmate Keele on June 26, 2015.

    b. Failing to fix the emergency call button located in plaintiff's cell or provide better supervision of the inmates on or before June 26, 2015.

2. (DWIGHT) Cruel and Unusual Punishment under the Eighth Amendment for Deliberate Indifference to plaintiff's medical (mental health) needs by:

    a. Failing to alert mental health staff of plaintiff's suicidal/self-harm tendencies on May 2, 2015.

    b. Providing plaintiff with a razor to cut himself on May 2, 2015.

III.
STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A qualified immunity defense, however, alters the usual summary judgment burden of proof, such that governmental employees need only assert

the defense in good faith, putting forth no evidence, to shift the burden to the non-movant to show the defense does not apply. *Davalos v. Johns*, 2013 WL 1820313, at *3-4 (N.D. Tex. Apr. 30, 2013)(citing *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)). The non-movant must demonstrate how specific evidence in the record, and all reasonable inferences therefrom, viewed by the court in a light most favorable to the non-movant, presents a genuine, material fact dispute for trial regarding all essential elements of the claim(s). *Id.* at 4. "Conclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment." *Id.* Plaintiff's failure to produce proof as to *any* essential element of the claim renders all other facts regarding that claim immaterial. *See Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007). Summary judgment is mandatory as to the claim in question if plaintiff fails to meet this burden. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994)(en banc)(per curiam).

Qualified immunity is a defense that protects government officials from suit when they exercise the discretionary functions of their office. *See Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). In order to overcome a defense of qualified immunity, a plaintiff must establish that: "(1) the official violated a statutory or constitutional right, and (2) the right was 'clearly established at the time of the challenged conduct,'" *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (citing *Ashcroft v. al-Kidd*, l31 S.Ct. 2074, 2080 (2011)). Plaintiff must demonstrate that the defendant's conduct was objectively unreasonable in light of the legal rules clearly established at the time of her actions. *Thomas v. City of Dallas*, 175 F.3d 358 (5th Cir. 1999). Conclusory allegations of wrongdoing will not satisfy these requirements. *Geter v. Fortenberry*, 849 F.2d 1550, 1553 (5th Cir. 1988). The court may examine these factors in any order. *Pearson v. Callahan*, 555 U.5.223 (2009), *overruling in part Saucier v. Katz*, 553 U.S. 194 (2001). It is a

plaintiff's burden to present evidence that a defendant is not entitled to qualified immunity when the defense is raised. *See Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001).

Claims of qualified immunity are not judged on twenty-twenty hindsight, or in light of knowledge ascertained after an event, but by looking through the eyes of the public official, considering what that official knew about the situation at the relevant time. *Graham v. Connor*, 490 U.S. 386, 396-97 (1989); *Poole v. City of Shreveport*, 691 F.3d 624, 630 (5th Cir. 2012). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *See Pierce v. Smith*, 117 F.3d 866, 882 (5th Cir. 1997) (emphasis in original omitted). If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact. *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005) (citing *Malley*, 475 U.S. at 341).

IV.
THE LAW ON DELIBERATE
INDIFFERENCE UNDER THE EIGHTH AMENDMENT

A. DELIBERATE INDIFFERENCE TO SAFETY/FAILURE-TO-PROTECT

The right of an inmate to be protected from assault by other inmates was clearly established at the time of the events giving rise to this lawsuit. *See Farmer v. Brennan*, 511 U.S. 825 (1994). To establish a civil rights claim against a prison official for failure-to-protect, a plaintiff "must show that he [was] incarcerated under conditions posing a substantial risk of serious harm *and* that prison officials were deliberately indifferent to his need for protection."

*Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) (citing *Farmer*, 511 U.S. at 834) (emphasis added). "Deliberate indifference" is a subjective standard that occurs only where a prison official knows of and disregards a substantial risk to the inmate's health or safety. *Farmer*, 511 U.S. at 837. Thus, the standard requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Neals*, 59 F.3d at 533 (quoting *Farmer*, 511 U.S. at 837).

Because defendants BROOM and LONG have asserted entitlement to qualified immunity in response to plaintiff's claims of failure-to-protect, the Court must "determine whether, in light of the facts as viewed in the light most favorable to the plaintiff, the conduct of the individual defendants was objectively unreasonable when applied against the deliberate indifference standard." *Jacobs v. West Feliciana Sheriff's Dep't*, 228 F.3d 388, 394 (5th Cir. 2000). Whether a defendant's conduct was objectively reasonable in light of the subjective standard of deliberate indifference is a question of law for the court to decide. *Id*. The burden has shifted to the plaintiff to show that defendants are not entitled to qualified immunity now that they have asserted this defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). To defeat qualified immunity in the instant case, plaintiff must establish that defendants were actually aware of a substantial risk of attack by plaintiff's cellmate, and simply disregarded that risk, thereby acting unreasonably in their failure-to-protect plaintiff. *Jacobs*, 228 F.3d at 395 (citing *Farmer*, 511 U.S. at 846-48).

In his amended complaint, plaintiff alleges that inmate Keele attacked him with a razor and that he suffered lacerations to his arms and chest. [ECF 45 at 3-5]. Plaintiff alleges that *inmate Keele* had previously informed BROOM and LONG that he (Keele) wanted to hurt himself "or someone." [ECF 45 at 4; ECF 22 at 2]. Plaintiff is not clear in his amended

complaint or answers to the questionnaires exactly when Keele informed BROOM and LONG of his own self-injurious thoughts, but plaintiff states that BROOM told Keele that they believed plaintiff and Keele were getting along, because there was no blood evident in the cell (indicating a lack of injury to the cellmates). [ECF 22 at 1-2]. According to plaintiff, BROOM and LONG did not begin an investigation into the conflict between Keele and plaintiff and they did not attempt to have plaintiff removed from the cell.

Plaintiff also alleges in response to questionnaires required by the Court that BROOM and LONG were aware that the emergency call button in the cell he shared with inmate Keele was not working on the day in question (June 26, 2015). Plaintiff claims that he filed grievances concerning the failure of staff to respond to the emergency call button and its apparent lack of function; plaintiff also claims he discussed the non-functioning emergency call button with BROOM and LONG and they told him to shout out for help if needed. [ECF 22 at 2-3; ECF 81 at 3].

As discussed above, to show deliberate indifference to his safety, an inmate must demonstrate that a prison official subjectively knew of and disregarded a substantial risk of harm to the inmate. *Farmer*, U.S. at 837. Thus, BROOM and LONG must have actually drawn the inference that there was a substantial risk of harm to plaintiff if they failed to remove him from the presence of his cellmate Keele prior to the altercation on June 26, 2015. "An official's failure to alleviate a significant risk that he *should have* perceived *but did not*, while no cause for commendation cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. "To sustain constitutional claim, [the inmate] must demonstrate something approaching a total unconcern for his welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *King v. Fairman*, 997 F.2d 259, 261 (7th Cir. 1993).

Threats of violence from one inmate upon another inmate is all too common in the prison environment. *See Newton v. Black*, 133 F.3d 301, 307 (5th Cir. 1998). "If action on the part of prison officials was constitutionally required every time a threat was reported, inmates would quickly learn to control the prison environment simply by making threats." *Hamilton v. Dretke*, 2009 WL 320777 (N.D. Tex. Feb. 10, 2009). Even though plaintiff alleges that *inmate Keele* reported wanting to hurt himself "or someone" to defendants BROOM and LONG, and the Court accepts this as true for purposes of this opinion, this report by Keele to defendants, without more, does not demonstrate that BROOM or LONG actually perceived, and ignored, a substantial risk of harm to plaintiff.

Even assuming plaintiff has demonstrated an excessive risk to his safety by housing him in a cell with a non-functioning emergency call button with another inmate who had reported self-injurious behavior to a guard, plaintiff has failed to articulate specific facts or present any summary judgment evidence that could demonstrate that BROOM or LONG drew the inference that plaintiff faced a serious risk of harm from inmate Keele. Plaintiff has not alleged inmate Keele had a violent history against other inmates and BROOM and LONG were aware of this history. Plaintiff has not alleged any prior fighting or altercations between Keele and himself. Plaintiff has not alleged or demonstrated that *he* filed a report of conflict with his cellmate *prior to* the altercation or requested a hearing on his safety due to being housed with inmate Keele *prior to* the altercation. Plaintiff has not alleged that the non-functional emergency call button led to a previous attack on the plaintiff without intervention from guards. Thus, plaintiff has not alleged that either BROOM or LONG was subjectively aware that inmate Keele posed a specific threat to the plaintiff. Plaintiff has not alleged that BROOM or LONG had the authority to immediately rehouse the plaintiff as a precautionary measure. The Court accepts that plaintiff

had notified prison security of the non-functioning emergency call button prior to the altercation, but the competent summary judgment evidence indicates that this notification was in reference to plaintiff's tendency to inflict *self-harm*.

      Furthermore, defendants BROOM and LONG have submitted evidence showing that plaintiff had a history of problems with prior cellmates. In the few months that plaintiff was housed at the Clements Unit prior to the altercation with inmate Keele in June, plaintiff had been rehoused multiple times with different cellmates. Plaintiff had also been found guilty of a disciplinary case after threatening another inmate, Semien, with assault because plaintiff wanted to be housed alone and not with another inmate. The Office of the Inspector General ("OIG") conducted an investigation into the incident between inmate Keele and plaintiff, and plaintiff was immediately removed from being housed with Keele after the June 26, 2015 altercation. This evidence indicates that BROOM and LONG had reason to believe that inmate Keele's report that he "did not feel safe" with plaintiff might have been a report more of a threat to *Keele* than to plaintiff, given plaintiff's history. Plaintiff has not established that Keele had a violent history with other inmates.

      Prison officials are not expected to prevent all inmate-on-inmate violence. *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003) (citing *Farmer*, 511 U.S. at 384). An inmate may show that a prison official was subjectively aware of a risk to the prisoner's safety by pointing to either direct evidence of the official's knowledge or circumstantial evidence that would show that the official *must* have known about the risk. *Id*. at 512. An allegation that an official negligently failed to protect an inmate from another inmate is not enough to state a constitutional claim. *Davidson v. Cannon*, 474 U.S. 344, 347 (1986). The officer must have the subjective intent to cause harm. *Mace v. City of Palestine*, 333 F.3d 621, 626 (5th Cir. 2003). A plaintiff cannot

make generalized allegations, nor can he support a claim based on any theory of vicarious liability. *Howard v. Fortenberry*, 723 F.2d 1206, 1209 (5th Cir. 1984). There must be an affirmative link between the incident and some act by the defendant. *Rizzo v. Goode*, 423 U.S. 362, 375-77 (1976). Conclusory allegations are insufficient to state a cognizable claim under the Civil Rights Act. *See Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). Plaintiff's substantive belief that BROOM and LONG knew Keele would attack plaintiff based on Keele's report of self-injurious and possibly violent thoughts, is insufficient to maintain a civil rights claim. Thus, the undersigned finds that BROOM and LONG's qualified immunity remains intact, entitling them to judgment as a matter of law.

    B.  DELIBERATE INDIFFERENCE TO MEDICAL (MENTAL HEALTH) NEEDS

Deliberate indifference "is an extremely high standard to meet." *Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 882 (5th Cir.2004). ("We begin by emphasizing that our court has interpreted the test of deliberate indifference as a significantly high burden for plaintiffs to overcome."). A prison official acts with deliberate indifference "only if (A) he knows that inmates face a substantial risk of serious bodily harm and (B) he disregards that risk by failing to take reasonable measures to abate it." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)); *see also Reeves v. Collins*, 27 F.3d 174, 176–77 (5th Cir.1994). Unsuccessful medical treatment, acts of negligence or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. *Hall v. Thomas*, 190 F.3d 693 (5th Cir.1999); *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir.1999); *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir.1995); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991).

A showing of deliberate indifference requires the prisoner to submit evidence that prison

officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.1985). The Fifth Circuit has defined a "serious medical need" as "one for which treatment has been recommended or for which the need is so apparent that *even a layman* would recognize that care is required." *Gobert*, 463 F.3d at 345 n.12 (emphasis added).

*Gobert* requires a medical need to be so serious that even a "layman" would recognize the need for further care in order to meet the deliberate indifference standard. 463 F.3d at 345 n.12. By adopting this standard, the Fifth Circuit has joined other circuits in the doctrine of reasonable reliance on medical personnel in deliberate indifference cases. A prison official may rely on a medical professional's opinion if such reliance is reasonable. *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002) ("The law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision."). "Except in the unusual case where it would be evident to a layperson that a prisoner is receiving inadequate or inappropriate treatment, prison officials may reasonably rely on the judgment of medical professionals." *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006). It has been clearly established for over a decade that *unreasonable* reliance on the advice of a medical professional will not excuse deliberate indifference to a prisoner's serious medical needs. *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir.2004); *Hamilton v. Endell*, 981 F.2d 1062, 1066-67 (9th Cir. 1992) ("By choosing to rely upon a medical opinion which a *reasonable person* would likely determine to be inferior, the prison officials took actions which may have amounted to the denial of medical treatment, and the unnecessary and wanton infliction of pain.")(quotation omitted).

Whether a prison official had the requisite knowledge of a substantial risk is a question of

fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious; however, that risk must be obvious from the specific facts known to the defendant in this particular circumstance. *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994). "The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial risk of serious damage to his future health, and *it does not matter whether the risk comes from a single source or multiple sources*, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." *Id.* at 843 (internal quotation omitted and emphasis added). Thus, the risk must be cognizable, but the consequences of that risk need not yet have materialized, in order to define the time to begin to determine whether the defendant disregarded the risk. *See Gates v. Cook*, 376 F.3d 323, 341 (5th Cir. 2004) (holding that an Eighth Amendment plaintiff did not have to prove that he was actually injured by exposure to raw sewage, only that such exposure posed a serious health risk). Rather, the defendant's action or inaction before the risk is realized remains relevant to the analysis of deliberate indifference. "A remedy need not await a tragic event." *Helling v. McKinney*, 509 U.S. 25, 33 (1993).

With regard to DWIGHT'S qualified immunity, the question before the Court is the knowledge DWIGHT had that providing an inmate who makes an outcry for mental health treatment with a razor and failing to notify mental health staff of the inmate's outcry would create a substantial risk of serious harm. The Court finds that providing an inmate who is having a mental health crisis with a razor and failing to notify mental health staff immediately of the claim of inflicting self-harm creates a risk of serious injury so obvious that DWIGHT's

subjective knowledge of the risk can be presumed. At the summary judgment level, the Court does not weight the evidence. Plaintiff has alleged that DWIGHT ignored his requests for mental health treatment. The summary judgment evidence reflects that plaintiff did in fact have a razor and did in fact cut himself on May 2, 2015. Defendant DWIGHT has not submitted an affidavit in response to the allegations. Defendant DWIGHT argues in his brief attached to the Joint Motion that plaintiff received medical care and was referred to crisis management the same day he cut himself. This, however, is not responsive to plaintiff's claims that he informed DWIGHT of his intent to cut himself *before* he did so, and DWIGHT basically "called his bluff" by providing him with a razor. Daring a mentally ill inmate to injure himself to receive care amounts to deliberate indifference to the mental health and medical needs of an individual who is evincing self-injurious thoughts and behaviors.

Accordingly, the undersigned finds plaintiff has raised a fact question as to the qualified immunity of defendant DWIGHT regarding plaintiff's incident of self-harm on May 2, 2015.[1]

## V.
## RECOMMENDATION

For the reasons set forth above, it is the RECOMMENDATION of the Magistrate Judge to the District Judge that the "Motion for Summary Judgment" filed by defendants BROOM, LONG, and DWIGHT be GRANTED IN PART and DENIED IN PART. Specifically, it is RECOMMENDED that summary judgment be DENIED as to plaintiff's Eighth Amendment deliberate indifference to medical (mental health) needs as to DWIGHT and that summary judgment be GRANTED as to plaintiff's Eighth Amendment deliberate indifference to safety

---

[1] The Court finds this situation distinguishable from that of the other two defendants because plaintiff does not allege either that BROOM or LONG ignored his medical needs for mental health treatment on any occasion, or that BROOM or LONG had reason to believe inmate Keele would injure plaintiff based solely on inmate Keele's statements about "not feeling safe" or wanting to harm himself "or someone."

claims as to BROOM and LONG. It is further the RECOMMENDATION of the Magistrate Judge that defendants BROOM and LONG be dismissed from this lawsuit, as they are entitled to qualified immunity on all claims asserted against them.

## VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED on June 22, 2018.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

### *NOTICE OF RIGHT TO OBJECT*

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).